## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RUDOLPH WADE**                                       **CIVIL ACTION**

**VERSUS**                                             **NO.  14-960**

**N. BURL CAIN, WARDEN**                               **SECTION "N"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

### I. *Procedural history*

Petitioner, Rudolph Wade, is a state prisoner incarcerated in the Louisiana State

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

Penitentiary, in Angola, Louisiana.  On November 30, 2006, he was indicted by an Orleans

Parish Grand Jury on one count of aggravated rape.[2]  On September 12, 2007, the matter

proceeded to trial by jury where the following facts were adduced, as set forth by the Louisiana

Fourth Circuit Court of Appeal on direct appeal:

> DR. EVAN FUSCO:
> Direct examination by the state:
>
> Both the state and the defense stipulated as to Dr. Fusco's expertise in
> emergency medicine.  On February 10, 1996, Dr. Fusco examined the victim,
> C.L., in the emergency room of Charity Hospital in New Orleans. The victim told
> Dr. Fusco that she was abducted in her car by an unknown black male and
> forced to drive to Algiers at gunpoint. The victim informed Dr. Fusco that she
> was "pistol whipped" and was struck on the chest, arms, and neck. She also
> complained of abdominal pain and vaginal soreness. He observed that she had
> bruising of the peri-urethral area and the perineum, the vaginal area. These
> findings were consistent with forced penetration. He also observed a bruise
> above her left forehead, bruising to her upper chest and bruising and grip marks
> on both of her arms around the bicep area. There were bruises on the front of
> her left thigh and on the front of her right lower leg. There were finger marks
> on her neck, which Dr. Fusco described as typical of strangulation. There were
> also finger marks around the upper area of both arms. He also noted bruising
> between the urethra and the introitus of the vagina. The victim admitted that
> she had been drinking beer earlier in the day. Dr. Fusco did not detect any odor
> or evidence of alcohol use during the examination.
>
> Cross-examination by the defense:
>
> Dr. Fusco performed blood tests on the victim to check for sexually transmitted
> diseases. He did not recall if any tests were conducted to check for blood alcohol
> or drug levels. Dr. Fusco stated that the term "pistol whipped" in his report was
> a direct quote from the victim. No stitches or sutures were required. Dr. Fusco
> could not remember if the victim was given narcotic pain killers.

---

[2] State Rec., Vol. 1 of 5, Grand jury indictment.

Re-direct examination by the state:

Dr. Fusco testified that if he had seen a need to screen for drugs that he would have done so.

CO. L. [brother of the victim]:
Direct examination by the state:

On February 10, 1996, Co. L., brother of the victim, arrived at Charity Hospital at around 2:00 a.m. He observed that his sister was crying, angry and could not believe what had happened to her. He observed bruises on her neck, shoulder area and head. Her eyes were swollen and remained swollen for several days. Ten years after the rape, Mr. L. was contacted by Detective Joseph Goines who informed him that he was investigating the case and needed to contact his sister. Mr. L. contacted his sister and gave her Goines's phone number.[3]

JENNIFER MCDONALD:
Direct examination by the state:

Jennifer McDonald, a New Orleans Police Department 911 Communication Center Supervisor, read the transcript of call number 15650. She described the call as a report of a rape; the call was generated at 12:31 a.m. on February 10, 1996 from 2401 General DeGaulle Boulevard. The caller stated that she had been abducted from a Time Saver convenience store at Aimes and Barataria Boulevards in Jefferson Parish, and she described her assailant as a black male wearing a long sleeve shirt, black pants, black cap and standing approximately six feet tall, wearing round frame glasses and carrying a handgun. Police units were dispatched to answer the call.[4]

OFFICER CARL PALMER:
Direct examination by the state:

Officer Carl Palmer was assigned to the New Orleans Police Crime Lab on

---

[3] No cross-examination was conducted (footnote in original).

[4] No cross-examination was conducted (footnote in original).

February 10, 1996. He completed the rape investigation for the victim, C.L. He photographed the scene of the rape, the area of 2601 General DeGaulle Boulevard, and the exterior and interior of the victim's 1984 white Oldsmobile Cutlass Ciera. The interior photograph showed a broken rearview mirror on the front floor. Officer Palmer took full body photographs of the victim and dusted the right front door and the rearview mirror for fingerprints; no fingerprints were found.

Cross-examination by the defense:

Officer Palmer stated that he received the dispatch at 1:10 a.m. and arrived on the scene at 1:31 a.m. He did not know how the rearview mirror came to lie on the floor of the car.

SHIRLEY CLAYTON:
Direct examination by the state:

Shirley Clayton, Police Technical Specialist for the New Orleans Police Department photo lab, determined that all of the 1996 crime lab photographs as well as the film canisters, taken in connection with this case, were destroyed in Hurricane Katrina.

Cross-examination by the defense:

Ms. Clayton testified that the photo lab had over four feet of flood water inside and that all 1996 records were destroyed in the flood.

JENNIFER SCHRODER:
Direct examination by the state:

Both the state and the defense stipulated that Jennifer Schroder, criminalist with the New Orleans Police Department Crime Lab, was an expert in molecular biology. Her job responsibilities included processing DNA evidence and administering the local DNA data base. She stated that when DNA material is uploaded into a state or federal data base and a match is found for a New Orleans case, a notification is sent to the administrator for the New Orleans data base. She received such a notice in relation to the instant case. She generated a letter to the investigators assigned to the case informing them that a match was found and the steps necessary to confirm the match. The match notification

4

identified the individual as defendant, Rudolph Wade. The investigators were instructed to obtain another DNA sample from defendant for confirmation testing. Subsequently, the investigators provided her with a Buccal swab from defendant's inner cheek. All thirteen genetic markers in defendant's sample matched the genetic markers in the original sample.[5]

ANNE MONTGOMERY:
Direct examination by the state:

Both the state and the defense stipulated that Ms. Montgomery, director for the DNA Lab in Jefferson Parish and technical leader for the New Orleans DNA lab, was an expert in molecular biology and DNA forensic analysis. Defense counsel also stipulated that the DNA material from the crime scene was a match with defendant.

Ms. Montgomery performed a DNA profile from a reference Buccal swab taken from defendant's inner cheek. Defendant's DNA was then compared to the DNA of the sperm recovered from the vaginal swab from the victim on the night of the rape. The test results showed that defendant could not be eliminated as the sperm donor. Ms. Montgomery also compared the DNA profile of defendant's fraternal twin brother, Adolph Wade. The test results showed that Adolph Wade was one hundred percent excluded as a potential sperm donor in this case.[6]

DETECTIVE DENNIS DEJEAN:
Direct examination by the state:

Detective Dejean was assigned to the New Orleans Sex Crime Unit in 1996. On February 10, 1996 he was assigned to investigate a rape in the area of 2401 General DeGaulle Boulevard. The victim was at a gas station across the street from the crime scene. Upon arrival at the gas station Detective Dejean identified the victim as C.L. He described her appearance as disheveled: her hair was messed up, she was sweating, she had a number of scratches and bruises on her neck and hands, and she was very upset, crying and trembling. The victim

---

[5] No cross-examination was conducted (footnote in original).

[6] No cross-examination was conducted (footnote in original).

escorted Dejean across the street to her car where the rape occurred on the front seat. The crime lab processed the car for evidence. After a brief initial conversation with the victim, Detective Dejean had her transported to the hospital, where she would undergo a medical examination and sexual assault procedure examination and could give a more in-depth statement. Later, when Detective Dejean interviewed the victim at the hospital she had calmed down, was coherent, and showed no signs of drug or alcohol use. She was unable to identify her assailant. Detective Dejean was not able to develop a suspect at that time.

Cross-examination by the defense:

Detective Dejean stated that he had read and reviewed his 1996 police report prior to testifying. The victim admitted that she had been drinking beer earlier that day. Dejean did not detect any indication of narcotics use and was unaware if any test was performed to detect the presence of cocaine.

DETECTIVE JOSEPH GOINES:
Direct examination by the state:

In 2006 Detective Joseph Goines of the New Orleans Police Department Sex Crimes Unit was notified by the DNA lab that a possible suspect in the victim's rape case had been located. Detective Goines contacted the victim's brother, and through him was able to contact the victim. Because the victim was unsure of Detective Goines's identify as a police officer, she requested that he meet her at a Krispy Kreme doughnut shop. Ms. L. confirmed that she had filed a sexual assault complaint in either 1995 or 1996. After verifying her identity, he asked her if she wished to proceed with the investigation; she stated that she did. The defendant was eventually located, and an arrest warrant was issued on September 28, 2006. A court order was obtained to take a DNA sample from defendant.

Cross-examination by the defense:

Detective Goines again reiterated that victim confirmed that she had filed a sexual assault complaint in either 1995 or 1996.

C. L.:
Direct examination by the state:

6

On the evening of February 10, 1996, the victim drove to a convenience store to purchase beer for her father-in-law and milk for her children. She was driving a white 1984 Cutlass Ciera. It was very foggy. She parked in the convenience store parking lot. As she attempted to exit the car, defendant opened the front passenger side door, grabbed her right arm and pulled her back into the car. He put a handgun to her head and ordered her to drive; he threatened to kill her if she did not comply. As she was driving, defendant kept ordering her not to look at him or he would kill her. Eventually, defendant ordered the victim to stop the car and to remove her underwear. He then ordered her to "lie down" on the front seat. When she realized that she was going to be raped, she began to struggle with defendant. During the ensuing struggle, the rearview mirror was broken. Defendant struck the victim in the head with the gun. She stopped struggling at this point because she believed that he would kill her. After defendant raped the victim, he removed a ring from her finger and told her that she was free to leave. Defendant exited the car and left on foot.

The victim drove to a gas station across the street from where the rape occurred, and told the station clerk that she had been raped and to call 911. Because she was afraid that defendant would return, she ran back into her car and locked the doors. She was in shock, scared and in pain. Within minutes the police arrived at the station. She told them that she had been raped, took them to the location of the rape, and gave a description of defendant. She did not know defendant, did not invite him into her car, and did not have consensual sex with him. At the hospital, she was given a rape examination, and photographs were taken of her body. She observed bruises on her arms, head and inside her thigh area. She was not contacted by the police until Detective Goines contacted her in 2006 and asked to interview her. She requested that they meet at a Krispy Kreme doughnut shop because she was unsure of his identity. Detective Goines informed her that a possible suspect in her case had been extradited to New Orleans from Maryland. He asked her if she wanted to pursue the case; she told him that she did. Subsequently, she was contacted by the district attorney's office and testified before a grand jury.

Cross-examination by the defense:

Ms. L. admitted that around 2:00 or 3:00 p.m., on the day of the rape, she had consumed beer. She drove to the convenience store to purchase more beer for her father-in-law. She did not recall what time she went to the convenience store, but knew that it was at night. She reiterated that she was in the process

7

of exiting her car when defendant pulled her back inside. He immediately placed the gun in her face. She denied that she gave defendant her ring. She reiterated that defendant was holding a gun to her the entire time of the rape. She admitted asking defendant to use a condom after she realized the rape was inevitable because she did not want to be exposed to a sexually transmitted disease; defendant refused.

Re-direct examination by the state:

Ms. L. denied requesting that defendant use a condom because the sex was consensual. She stated that defendant threatened her with a gun and forced himself on her.

Re-cross examination by the defense:

Ms. L. denied telling the investigative police officers that she was abducted at gunpoint from an unknown location at approximately 8:00 p.m. on the night of the rape.

RUDOLPH WADE:
Direct-examination by the defense:

Defendant denied having been convicted of a crime of violence or any crime involving a sexual assault. He denied forcing himself on Ms. L. and stated that the sex was consensual. He testified that on the date in question, he was selling drugs on a corner near the Fischer Housing Project on Whitney Avenue during daylight hours when Ms. L. drove up and asked him, "Anybody got anything?" He responded, "What are you looking for?" Ms. L. responded, "Rocks." Defendant told her that he had some, and she asked for a "dime" (a single rock of cocaine). She invited him to get into her car. Ms. L. told him that she did not have a crack pipe. He responded that he had a pipe and instructed her to drive down Whitney Avenue and turn behind the school to the back of the projects. Ms. L. backed her car into a parking slot near a fence by the bridge; the two smoked the cocaine. He denied that he had a gun.

After smoking the cocaine Ms. L. asked if she could get more for the twelve dollars that she had left. Defendant told her, "We don't work like that; we don't sell two dollar rocks." Ms. L. replied that she would do something for him in return for the drugs. He agreed, and they engaged in sexual intercourse on the

front seat. He denied that she told him to stop and denied that she asked him to use a condom. After they engaged in sex they smoked another rock of cocaine. Ms. L. then asked defendant, "Can you front me something?" Defendant responded that he did not know if he could do that because he had to account to his supplier. The victim then removed a ring from her finger and gave it to him. In exchange, he gave her another rock of cocaine which she smoked. After smoking the cocaine, Ms. L. began to cry, saying that she could not go home without her ring. Defendant told her if she brought him forty dollars he would return the ring to her. She agreed. He rode with her until she reached the service road on General DeGaulle; defendant exited the car and walked away. He never saw Ms. L. again. He admitted that he had convictions for auto theft and possession of cocaine.

Cross-examination by the state:

Defendant stated that he sold drugs for sex many times and remembered all the "tricks" that he turned. He remembered the details of sex with Ms. L. because they had smoked crack together and because she initiated the sex, "dog style". He denied that he struck or grabbed her and denied having rough sex with her. When Ms. L. left him he described her as being "in perfect health." He denied having a gun. He admitted that after the encounter with Ms. L. he moved to Baltimore, Maryland. He denied that he had a conviction in Maryland for carjacking with a weapon.

Re-direct examination by the defense:

Defendant again denied having a conviction for carjacking. He also denied that his brother, Adolph, had a conviction for carjacking.[7]

On September 13, 2007, a jury found Wade guilty of forcible rape.[8]  The State filed a muliple

---

[7] *State v. Wade*, 2008-KA-1280 (La. App. 4th Cir. 5/20/09), 2009 WL 8688917 at *1-6, 10 So.3d 897 (Table, Text in Westlaw); State Rec., Vol. 2 of 5.

[8] State Rec., Vol. 1 of 5, Docket Master and minute entry of September 13, 2007; *see also* Jury Verdict.

bill of information charging Wade as a second felony offender.[9]  On October 19, 2007, he was sentenced to a term of forty (40) years imprisonment.  Upon finding him to be a second felony offender, the trial court vacated that sentence and resentenced him to a term of eighty (80) years imprisonment at hard labor without benefit of parole, probation or suspension of sentence pursuant to Louisiana Revised Statute 15:529.1.[10]  On that same date, Wade moved orally for a motion to reconsider the sentence and for an appeal.[11]

On May 20, 2009, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction, finding no merit as to his claims that the trial court erred in its rulings on challenges for cause during voir dire or in the admission of alleged prejudicial hearsay testimony.  As for the excessive sentence claim, however, the court of appeal concluded that the sentence was not yet final or appealable due to the pending motion to reconsider the sentence.  Consequently, the court of appeal remanded the case to the trial court for a ruling on the oral motion to reconsider the sentence, reserving his right to appeal the sentence once the ruling was made.[12]

---

[9] State Rec., Vol. 1 of 5, Multiple bill of information.

[10] *Id.* (minute entry of October 19, 2007); *see also* State Rec. Vol. 3 of 5 (Transcript of sentencing).

[11] State Rec., Vol. 3 of 5 (Transcript of sentencing, pp. 23-24); State Rec., Vol. 1 of 5, minute entry of October 19, 2007.  The record reflects only the entry of an oral motion to reconsider the sentence; no ruling on the motion was entered at this time.  A written notice of appeal was subsequently filed into the record and that motion was granted in June 2008. State Rec., Vol. 1 of 5.

[12] *State v. Wade*, 2008-KA-1280 (La. App. 4th Cir. 5/20/09), 2009 WL 8688917, at *8-9.

On or about October 14, 2009, Wade filed a related application for a writ of certiorari with the Louisiana Supreme Court. The writ application was denied without comment on October 1, 2010.[13]

While pursing his direct appeal, Wade also filed an application for post-conviction relief with the state district court.[14] In his application, he raised three claims for relief: (1) he was denied effective assistance of counsel; (2) the trial court erred in allowing the introduction of hearsay evidence; and (3) the sentence imposed was excessive. On March 11, 2010, the state district court denied the application as time-barred.[15] However, this ruling was subsequently vacated by the Louisiana Fourth Circuit Court of Appeal.[16] The court of appeal concluded that

---

[13] *State ex rel. Wade v. State*, 2009-KH-2296 (La. 10/1/2010), 45 So.3d 1091; State Rec., Vol. 4 of 5.

[14] State Rec., Vol. 1 of 5, Application for post-conviction relief bearing what appears to be a file-stamp date of March 15, 2010. While the date-stamped copy is incomplete, a full copy without the date stamp is attached as Appendix 1-A to his Louisiana Supreme Court writ application No. 13-KH-1780. State Rec., Vol. 5 of 5.

[15] As noted by the State, a copy of the ruling does not appear in the state court record. However, the Docket Master reflects an entry dated March 11, 2010, denying the application for post-conviction relief. Petitioner has also submitted a copy of the district court's ruling with his federal *habeas* petition. *See* Rec. Doc. 1, p. 55 of 57. Inexplicably, the court's ruling on the application predates the date stamped on the application.

[16] State Rec., Vol. 1 of 5, *State v. Wade*, 2010-K-0535 (La. App. 4th Cir. June 2, 2010) (unpublished writ ruling). Although the ruling incorrectly cites "the trial court's March 10, 2010 judgment," this is obviously a typographical error. While only the court of appeal's ruling is contained in the state court record, the State noted in its response that attempts to obtain the full record associated with this writ application have been unsuccessful, and therefore the documents associated with writ proceedings No. 2010-K-0535 are not part of the state court

11

Wade's post-conviction relief application should not have been considered and denied by the trial court when his appeal was not yet final, Louisiana Code of Criminal Procedure article 924.1.

Wade subsequently filed a writ application with the Louisiana Fourth Circuit Court of Appeal seeking a ruling on his motion to reconsider the sentence that remained pending before the trial court. On April 24, 2013, the court of appeal granted his writ application and ordered the district court to consider his motion to reconsider the sentence within 60 days.[17]

On May 13, 2013, the state district court denied Wade's motion to reconsider the sentence.[18] On this same date, the state district court also denied Wade's application for post-conviction relief as moot because his claims were previously raised and considered in his

---

record. The Court agrees a record of these proceedings is unnecessary for resolution of this matter.

[17] State Rec., Vol. 1 of 5, *State v. Wade*, 2013-K-0435 (La. App. 4th Cir. Apr. 24, 2013) (unpublished writ ruling). The court of appeal's ruling is contained in the state court record. However, as noted *infra.*, the State was unable to obtain the full record associated with this writ application as well, and therefore the documents associated with writ proceedings No. 2013-K-0435 are not part of the state court record. These records are unnecessary for resolution of this matter.

[18] State Rec., Vol. 1 of 5, District court's ruling on motion to reconsider sentence. The January date of the ruling appears to be incorrect and conflicts with both the Docket Master and minute entry that each reflect the motion was denied on *May* 13, 2013.

direct appeal.[19]  On June 16, 2013, the Louisiana Fourth Circuit Court of Appeal denied in part and granted in part Wade's related writ application.[20]  The ruling provided that the writ was granted and the district court's ruling vacated insofar as it denied Wade's excessive sentence claim because Wade's right to appeal his sentence had been preserved.  The district court was ordered to grant Wade an appeal of his sentence within 60 days.  In all other respects, the writ application was denied.[21]  Wade's related application for a supervisory writ of review with the Louisiana Supreme Court was denied without stated reasons on February 21, 2014.[22]

On April 14, 2014, Wade filed his federal application for *habeas corpus* relief.[23]  In his petition, Wade asserts the following grounds for relief:  (1) he was denied a fair and impartial jury by the trial court's improper rulings on challenges for cause during voir dire examination;

---

[19] Presumably, this ruling is directed to Wade's earlier filed post-conviction relief application and his inquiries regarding the status.  (State Rec., Vol. 1 of 5, Wade's letter to the clerk of state district court dated 9-30-12 and stamped 10-10-12).  The district court's earlier ruling denying relief on this application had been vacated by the court of appeal.

[20] State Rec., Vol. 5 of 5, *State v. Wade*, 2013-K-0809 (La. App. 4th Cir. June 19, 2013) (unpublished writ ruling).

[21] The state court record discloses that no such appeal to date was ever granted.  The undersigned, through his staff, has confirmed that no appeal is currently pending in the Louisiana Fourth Circuit.

[22] State Rec., Vol. 5 of 5, Louisiana Supreme Court writ application No. 2013-KH-1780; *State ex rel. Rudolph Wade v. State*, 2013-KH-1780 (La. 2/21/14), 133 So.3d 673.

[23] Rec. Doc. No. 1, Petition for writ of *habeas corpus.*  "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  The application was delivered to LSP officials for filing in this Court on April 14, 2014.  See Rec. Doc. 1, p. 17 of 57.

(2) the trial court erred in allowing into evidence certain prejudicial hearsay testimony and failing to allow the defense a limiting instruction; (3) his sentence was unconstitutionally excessive; and (4) he was denied effective assistance of counsel when his attorney failed to subject the State's case to meaningful adversarial testing, request a continuance to provide meaningful assistance and call alibi witnesses.

The State concedes that the federal petition is timely.  The Court finds that Wade's first two claims are properly exhausted, but do not warrant relief.  His third claim for relief, while admittedly unexhausted, should be denied as meritless.  And his fourth claim for relief is not properly exhausted, but procedurally defaulted in any event, and should be denied for that reason.

## II.  *Discussion*

A.  *Standards of review on the merits*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal

14

court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state

15

court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

B. *Petitioner's Claims*

(1) *Denial of a fair and impartial jury*

Wade contends the jury-selection rulings by the trial court violated his constitutional right to a fair and impartial jury. As argued in the state courts on direct appeal, Wade

complains that the trial court improperly granted the State's cause challenges as to six prospective jurors and also improperly denied the defense's cause challenge as to another prospective juror.[24]

On direct appeal, the Louisiana Fourth Circuit first rejected the claim as to five of the prospective jurors on independent procedural grounds, reasoning:

> Prospective jurors, Dominique, Thomas and McIntyre all stated emphatically during voir dire that they would not be able to return a verdict of guilty as charged if it meant that defendant could receive a life sentence.  Hutchinson and King stated that they would require scientific evidence to corroborate an eyewitness before they could return a guilty verdict.  Defendant complains that by granting the State's cause challenges for cause of these jurors the trial court, in effect, sent a message to the remaining jurors that responsive verdicts were not available and any skepticism about the victim's testimony was not permissible, thus depriving defendant of a fair trial.  The voir dire transcript reflects that no objection was made to the district court's dismissal of these jurors for cause.  Accordingly, review of the merits of the dismissal of these jurors has not been preserved on appeal, La. C.Cr.P. art. 841.

*State v. Wade*, 2008-1280, 2009 WL 8688917, at *6 (La. App. 4th Cir. 5/20/09).

(a)     *Procedurally defaulted claims as to Dominique, Thomas, McIntyre, Hutchinson, King*

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the

---

[24] The voir dire proceedings are located in State Rec., Vol. 3 of 5 (Transcript of trial - September 12, 2007).  For ease of reference, the numbers associated with these prospective jurors as they are referred to by name and alternatively by number in the state court record are as follows:  Dominique - #7; Thomas - #10; McIntyre - #15; Hutchinson - #40; King - #21; Nolan - #3; Washington - #22.

federal claim and is adequate to support that judgment. *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or *habeas* review. *Amos v. Scott*, 61 F.3d 333, 388 (5th Cir.1995). Procedural default does not bar review of a federal claim raised in a *habeas* petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is "independent" of federal law and rests on a state procedural bar. *Glover*, 128 F.3d at 902.  To be considered "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Id.*

The contemporaneous objection rule is a firmly established and regularly followed state practice in Louisiana.[25] *See State v. Campbell*, 983 So.2d 810, 863-64 (La. 2008); *State v. Todd*, 2009 WL 3155090 (La. App. 1st Cir. 9/11/09), 17 So.3d 519 (Table, Text in Westlaw).  The United States Fifth Circuit Court of Appeals has held that the contemporaneous objection rule is an independent and adequate state procedural bar.  *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.2002)(*citing Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977)); *see also Toney v. Cain*, 24 F.3d 240 (5th Cir. May 20, 1994).  Therefore, because the court of appeal's decision rested on an independent procedural bar that is adequate to support the judgment, *habeas* review of this claim is foreclosed.

---

[25] Louisiana Code of Criminal Procedure article 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

If a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Wade has not offered any cause for the default that would excuse the procedural bars imposed by the Louisiana courts. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir.1997) (*citing Engle*, 456 U.S. at 134 n. 43). Because Wade has failed to establish an objective cause for his default, the Court need not determine whether prejudice existed. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir.1979) (*citing Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir.1977)). Wade presents no argument and the record contains nothing to suggest his actual innocence on the underlying conviction. *Hogue*, 131 F.3d at 497 (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Wade has failed to overcome the procedural bar to his claim regarding jury selection error as to the first five prospective jurors. Accordingly, with the exception of his claims regarding Washington and Dr. Nolan, Wade's jury selection claim is procedurally defaulted and should be dismissed with prejudice.

(b)     *Exclusion of prospective juror Washington*

Wade asserts that the trial court erred in dismissing prospective juror Washington for cause. He argues only generally that prospective jurors were asked to "pre-judge the evidence

19

in the case and were not told of the responsive verdict options."[26]  As the State notes, he makes

no express argument as to why the trial court erred in excluding Washington in particular for

cause.  The Louisiana Fourth Circuit rejected this claim for the following reasons:

> La. C.Cr.P. art. 797 provides in pertinent part that the state or the defendant may
> challenge a juror for cause on the ground that:
> * * *
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion
> or impression as to the guilt or innocence of the defendant shall not of itself be
> sufficient ground of challenge to a juror, if he declares, and the court is satisfied,
> that he can render an impartial verdict according to the law and the evidence;
> (3) The relationship, whether by blood, marriage, employment, friendship, or
> enmity between the juror and the defendant, the person injured by the offense,
> the district attorney, or defense counsel, is such that it is reasonable to conclude
> that it would influence the juror in arriving at a verdict;
> (4) The juror will not accept the law as given to him by the court.
>
> "[A] challenge for cause should be granted, even when a prospective juror
> declares his ability to remain impartial, if the juror's responses as a whole
> reveal facts from which bias, prejudice or inability to render judgment
> according to law may be reasonably implied." *State v. Hallal*, 557 So.2d 1388,
> 1389–90 (La.1990), *quoting State v. Jones*, 474 So.2d 919 (La.1985). The trial
> court is vested with broad discretion in ruling on challenges for cause. *State v.
> Jacobs*, 99–1659 (La.6/29/01), 789 So.2d 1280. The reviewing court should
> accord great deference to the trial judge's determination and should not attempt
> to reconstruct the voir dire by a microscopic dissection of the transcript in
> search of magic words or phrases that automatically signify the juror's
> qualification or disqualification. *State v. Miller*, 99–0192 (La.9/6/00), 776 So.2d
> 396. Great discretion is afforded the trial court in ruling on a challenge for cause
> because the trial court has the benefit of seeing the facial expressions and
> hearing the vocal intonations of the members of the jury venire as they respond
> to questioning. *State v. Kang*, 2002–2812 (La.10/21/03), 859 So.2d 649. Such
> expressions and intonations observed and heard by the trial court are not
> readily apparent at the appellate level where a review is based on a cold record.

---

[26] Rec. Doc. No. 1, p. 29 of 57.

*Id.*

****

Washington stated during voir dire that he would require the state to produce an eyewitness to the alleged rape before he would return a guilty verdict. His response is evidenced by the following exchange:

    BY MS. BARTHOLOMEW:

    I am the only one with any burden. And, it is my job, mine and Ms. Glass, to prove to you beyond a reasonable doubt that this crime happened. All right? If all we put up there was the victim, and you believed her beyond a reasonable doubt, would that be sufficient for you? Mr. Washington?

    BY JUROR NUMBER TWENTY–TWO, MR. WASHINGTON:

    No.

    BY MS. BARTHOLOMEW:

    You would need more?

    BY MR. WASHINGTON:

    Yes.

    BY MS. BARTHOLOMEW:

    Just the testimony of that one victim would not be enough for you, given the scenario?

    BY MR. WASHINGTON:

    No.

    * * *

BY THE COURT:

All right. State, give me your challenges for cause.

BY MS. BARTHOLOMEW:

Mr. Washington.

The same thing.

BY MR. HURTT:

No, I think that he could be fair. When you say "only one eyewitness", please say, "Oh God. I need other factors."

BY THE COURT:

Well, he did say that he couldn't with just one witness.

BY MR. HURTT:

Yes, Your Honor.

BY THE COURT:

I'll grant it.

BY MR. HURTT:

You are granting it Judge?

BY THE COURT:

Yes.

BY MR. HURTT:

All right. We object.

> Considering that Mr. Washington did not waver or in any way qualify his responses and, considering that the trial judge observed Mr. Washington's demeanor and vocal intonations, it does not appear the trial court abused its discretion in granting the state's challenge for cause as to Mr. Washington. This claim is without merit.

*Wade*, 2009 WL 8688917 at *6-7. The Louisiana Supreme Court denied Wade's related writ application without additional comment.[27]

The Due Process Clause guarantees an accused the Sixth Amendment right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information. *Morgan v. Illinois*, 504 U.S. 719, 726–27 (1992); *Patton v. Yount*, 467 U.S. 1025, 1037 & n. 12 (1984). "The standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir.2000) (*quoting Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). (internal quotation marks omitted). A state trial court's decision as to a juror's impartiality is a factual determination entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Williams v. Cockrell*,

---

[27] On state post-conviction review, the claim was barred under La.C.Cr.P. art. 930.4(A) which precludes post-conviction review of claims already "fully litigated" on direct appeal. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir.1994). The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal. *Id.* at 1583. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." *Id.* This court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding. *Id.* at 1582–83.

46 F. App'x 227, 2002 WL 1940099, at *7 (5th Cir. Jul. 25, 2002) *(citing Jones v. Butler*, 864 F.2d 348, 362 (5th Cir.1988) (*quoting* pre-AEDPA 28 U.S.C. § 2254(d)(8)); *Oliver v. Quarterman*, 541 F.3d 329, 342 (5th Cir.2008).

In this case, the record demonstrates that the prospective juror was properly struck because he unequivocally stated that he would be unable to render a guilty verdict based on the uncorroborated testimony of the victim alone. As the appellate court noted, Washington remained steadfast in his refusal to consider returning a guilty verdict based solely on the testimony of the victim, even if he believed her testimony beyond a reasonable doubt. Furthermore, the trial court had the opportunity to observe Washington's demeanor as he answered the questions and was in the best position to assess whether he would be impartial and willing to determine guilt based on the evidence and the law as instructed. Because the evidence showed that prospective juror Washington was in fact unwilling and unable to decide the case impartially according to the law and the evidence, Wade has failed to overcome the presumption of correctness that attaches to the state court decision.

Moreover, Wade has failed to demonstrate that the seated jurors were not fair and impartial. *See Jones v. Dretke*, 375 F.3d 352, 356-57 (5th Cir. 2004), *quoting Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). To the extent he may argue generally that the final jury was prejudiced against him, the record shows otherwise, considering he was ultimately found guilty of forcible rape rather than aggravated rape. He has not shown that the jury selection process impeded his right to a fair trial. Nor has he demonstrated that the *impaneled* jury was prejudiced

against him or otherwise unable to render a fair and impartial verdict.

    (c)    *Improper denial of defense challenge of prospective juror Dr. Nolan*

In a related claim, Wade argues that the trial court erred in denying a defense challenge

for cause as to prospective juror Dr. Nolan during voir dire. On direct appeal, the Louisiana

Fourth Circuit Court of Appeal rejected this claim for the following reasons:

> Defendant asserts that the trial court erred in denying the defense's challenge for cause of Dr. Nolan. Defendant argues that Dr. Nolan expressed a familiarity with Charity Hospital and the sexual assault nurses program, and when asked if he had any preconceived notions about the case, he stated that he had "a lot of baggage" in his background. Defendant also argues that Dr. Nolan was unfit to serve in a case that involved scientific and medical evidence. By denying the defense's challenge for cause, the trial court forced the defense to use one of its peremptory challenges to dismiss Dr. Nolan which amounted to an unfair advantage to the state.

> Louisiana Constitution Article I, Section 17 guarantees a defendant the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. In a case involving imprisonment at hard labor, a defendant is entitled to twelve peremptory challenges. La. C.Cr.P. art. 799.[28]   When a defendant uses all of his peremptory challenges, an erroneous ruling of a trial court on a challenge for cause that results in depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional

---

[28] La. C.Cr.P. art. 799 provides:

> Number of peremptory challenges

> In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant.

and statutory rights, requiring reversal of the conviction and sentence. *See State v. Juniors*, 2003–2425 (La. 6/29/05), 915 So.2d 291. Prejudice is presumed when a trial court erroneously denies a challenge for cause and a defendant has exhausted his peremptory challenges. *State v. Robertson*, 92–2660, (La. 1/14/94), 630 So.2d 1278. Where an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. The defendant need only show two things to obtain a reversal of his conviction: (1) that the trial judge erred in refusing to maintain a challenge for cause by him; and (2) that he exhausted all of his peremptory challenges. *State v. Cross*, 93–1189, p. 6 (La.6/30/95), 658 So.2d 683, 686; *State v. Mathis*, 95–0862 (La. App. 4th Cir.6/5/96), 675 So.2d 1217.

In the instant case, the defense used all of its peremptory challenges before the jury panel was chosen. However, the defendant has not shown that the trial court abused its broad discretion in refusing to excuse Dr. Nolan for cause. At no time during questioning did Dr. Nolan express or imply that he could not impartially or fairly judge the case. He merely stated that he was a retired Navy Captain who had a tendency to see things "pretty black and white" and that because of his experience with rape victims he had a "lot of baggage" in his background. He never expressed a belief that the defendant was guilty based on any preconceived notions because of his experience with the sexual assault nurse examiners program at Charity Hospital or because of his medical and scientific background. Thus, defendant has failed to show that the court erred by finding there were no grounds to dismiss the juror pursuant to La. C.Cr.P. art. 797.

*Wade*, 2009 WL 8688917 at *7-8.

"A state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness." *Miniel v. Cockrell*, 339 F.3d 331, 338–39 (5th Cir. 2003); *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000); *Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *10 (E.D. La. Oct. 29, 2009). Therefore, a petitioner is entitled to *habeas* relief only if he rebuts the state court's factual finding by clear and convincing

26

evidence. *See Miniel*, 339 F.3d at 340; *Soria*, 207 F.3d at 242; *Anthony*, 2009 WL 3564827, at *10.

Here the trial judge observed the exchange with Dr. Nolan firsthand and made a reasonable assessment of his qualifications to serve.   Wade has presented no evidence showing that Dr. Nolan was in fact unwilling or unable to decide the case impartially according to the law and the evidence, and therefore he has not overcome the presumption of correctness that attaches to the state trial court's decision to deny the challenge for cause.  Nor has Wade alleged or established that the jury ultimately selected for his trial was anything other than impartial. He complains only that his counsel had to use a peremptory challenge to exclude Dr. Nolan because he was not dismissed for cause. His claim based on this theory alone fails to state any basis for federal *habeas* relief. *Soria*, 207 F.3d at 241–42; *Dorsey v. Quarterman*, 494 F.3d 527, 533 (5th Cir.2007); *Lagrone v. Cockrell*, No. 02–10976, 2003 WL 22327519, at *12 (5th Cir. Sep. 2, 2003).  The Supreme Court has "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). Instead, after the denial of a challenge for cause, when the challenged juror is removed by use of a peremptory challenge, the petitioner is entitled to federal *habeas* corpus relief only if he demonstrates that the jury ultimately selected to try the case was not impartial.  *Id.*, 487 U.S. at 85–86, 88–89; *Rivera v. Illinois*, 556 U.S. 148, 158–59 (2009); *Soria*, 207 F.3d at 241; *Williams*, 2002 WL 1940099, at *5–*6. "So long as the jury that sits is impartial, the fact that the defendant had to use a

27

peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Ross*, 487 U.S. at 88 (citations omitted).  For these reasons, Wade's claim lacks merit.

In sum, the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. *Habeas* relief is not warranted on this claim.

(2) *Impermissible hearsay/failure to give a limiting instruction*

Wade contends the state trial court erred in admitting inadmissible hearsay testimony. He refers to testimony by Jennifer McDonald involving a 911 call and testimony by Dr. Fusco regarding statements contained in the medical records of the victim's rape examination. Contrary to Wade's claim that "[he] objected and requested a limiting instruction, but was denied," no contemporaneous objections were made at trial, as the appellate court found and the state court record confirms.[29]  On direct appeal, the Louisiana Fourth Circuit held that, absent a contemporaneous objection, the claim was not properly preserved for appellate review pursuant to Louisiana Code of Criminal Procedure article 841.  *Wade*, 2009 WL 8688917, at *8. The Louisiana Supreme Court denied Wade's related writ application without additional comment.[30]

---

[29] State Rec., Vol. 3 of 5, pp. 22-25 (Jennifer McDonald); pp. 9-17 (Dr. Evan Fusco); p. 134 (jury instruction request).

[30] This claim similarly on state post-conviction review was barred under La.C.Cr.P. art. 930.4(A) which precludes post-conviction review of claims already "fully litigated" on direct appeal. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir.1994). The presumption in the rule is that the

As previously discussed with regard to his juror-challenge claim, the contemporaneous objection rule is an adequate and independent state ground that supports application of the procedural default doctrine.  Federal *habeas* review of this claim is foreclosed.  Wade provides no argument demonstrating cause for the default or actual prejudice as a result of the alleged violation of federal law, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.  Thus, the instant claim should be dismissed as procedurally barred.[31]

(3) *Excessive sentence*

Wade contends the 80–year prison sentence for forcible rape imposed upon him as a second felony offender is excessive because it is the maximum allowable sentence within the statutory penalty range, and the denial of parole for the full term is tantamount to a life

---

claims were not new or different from something previously litigated and resolved on appeal. *Id.* at 1583. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." *Id.* This court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding. *Id.* at 1582–83.

[31] In any event, Wade's argument regarding inadmissible hearsay presents only an evidentiary issue under state law and is not cognizable on federal review.  On federal *habeas corpus* review, a federal court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or other federal rights have been violated. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In order to be entitled to relief, a *habeas* petitioner must establish that the evidentiary ruling was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir.2005) (holding federal *habeas* review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated federal constitutional protections). Wade presents no such argument here.

sentence.

As the State notes and the procedural history herein shows, Wade's excessive sentence claim is unexhausted.  Nonetheless, under the AEDPA a district court may, in its discretion, deny on the merits *habeas* petitions containing unexhausted claims (*i.e.,* mixed petitions).  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").  This is particularly appropriate where, as here, the unexhausted claim is patently without merit.[32]

To the extent that Wade is arguing that his sentences are excessive under Louisiana law, the claim simply is not cognizable under federal *habeas* review.  Federal *habeas* corpus relief is available only to correct violations of federal constitutional law.  This Court does not sit to review alleged errors of state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.1998).  Therefore, even if petitioner's sentences were excessive under the Louisiana Constitution or if the trial court failed to comply with the state laws concerning sentencing procedures, which

---

[32] The State notes in its response that the claim is arguably still procedurally viable for review in the state courts.  While this may or may not be the case in light of the court of appeal's reservation of rights, to date Wade has not requested an appeal of his sentence and the state district court has not granted one.  Nonetheless, as this Court's review is strictly limited to federal constitutional violations under the Eighth Amendment and the opinion does not address or review any claim for excessiveness under the Louisiana Constitution or other sentencing error under state law, it in no way affects Wade's ability to pursue such a challenge in the state courts if he is still entitled to do so on direct appeal.  Nor would this ruling preclude him from a subsequent challenge on federal *habeas* review should his original sentence be overturned and a new sentence imposed.

are issues this Court need not reach, those errors would not be correctable in a federal *habeas corpus* proceeding.

To the extent, if any, that Wade is contending that his sentences are excessive under the Eighth Amendment of the United States Constitution, his claim lacks merit.  Although Wade terms the sentence harsh because it was the maximum penalty that could be imposed, simply because a penalty is harsh does not mean that it is unconstitutionally excessive.  The Eighth Amendment only forbids the imposition of extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade*, 538 U.S. 63, 72–73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). In *Lockyer*, the Supreme Court held that the state court's imposition of two consecutive terms of 25 years to life in prison for the *habeas* petitioner's "third strike" convictions on two counts of petty theft was not contrary to, and did not involve an unreasonable application of, the Supreme Court's clearly established precedent. *Id.* at 73–74. The Supreme Court reinforced that "[t]he gross disproportionality principle reserves a constitutional violation for only the *extraordinary* case."  *Id.* at 77 (emphasis added).

A sentence within statutory limits will not be upset by a federal *habeas* court, unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 291–92 (1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" this Court will then consider:  (1) the sentences imposed on other criminals in the same jurisdiction and (2) the sentences imposed for commission of the same

31

offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.1996) (*quoting Harmelin*, 501 U.S. at 1005) (*citing McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992)); *United States v. Gray*, 455 F. App'x 448, 449 (5th Cir.2011); *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir.2010), *cert. denied*, 131 S.Ct. 2470 (2011).  If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997), *overruled in part on other grounds*, *United States v. O'Brien*, 560 U.S. 218, 234–35 (2010) (as recognized in *United States v. Johnson*, 398 F. App'x 964, 968 (5th Cir.2010)).

Wade's sentence clearly fell within the limits set by the Louisiana legislature and does not qualify as an extraordinary case where the sentence is unconstitutionally disproportionate to the crime.[33]  *See United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir.2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes." (citations omitted)); *see also United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997) *(citing*

---

[33] For forcible rape, Louisiana law provides for a sentence of imprisonment at hard labor for not less than five nor more than forty years, at least two years of which shall be without benefit of probation, parole, or suspension of sentence.  La. R.S. 14:42.1(B); *see also* La. R.S. 15:529.1 (A) ("If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.").

*Rummel v. Estelle*, 445 U.S. 263, 274–76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted).

Given the circumstances of his undeniably violent crime that supported a charge of aggravated rape and conviction for forcible rape, his extensive criminal history of violent crimes including armed carjacking and numerous burglaries, and his predicate conviction in Louisiana for possession of cocaine, this case simply does not qualify as a rare situation in which the difference between the crime and the sentence was unconstitutionally disproportionate.[34] *Compare Solem v. Helm*, 463 U.S. 277, 281, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100"), with *Harmelin v. Michigan*, 501 U.S. 957, 961, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (rejecting a proportionality challenge to a mandatory sentence of life without the possibility of parole imposed on a first-time offender convicted of possessing 672 grams of cocaine), and *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (rejecting a proportionality challenge where the defendant had been sentenced to life imprisonment under a recidivist statute following his conviction for obtaining $120.75 by false pretenses). Given the decisions cited above involving relatively minor offenses, and in light of the seriousness and violent

---

[34] State Rec., Vol. 3 of 5, Sentencing transcript, pp. 17-20.

nature of the crime at issue here, the Court cannot conclude that Wade's sentence is grossly disproportionate or constitutionally excessive under federal law. Wade is not entitled to relief on this claim.

(4)  *Ineffective assistance of counsel*

Finally, Wade contends his counsel rendered ineffective assistance when he failed to subject the case to meaningful adversarial testing, failed to request a continuance to provide meaningful assistance and failed to call alibi witnesses. The State argues that this claim is both unexhausted and procedurally barred.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998) (*citing Rose v. Lundy*, 455 U.S. 509, 519–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (*citing* 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519–20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Id.* (*citing Picard v. Connor*, 404 U.S. 270, 275–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177–79, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

To exhaust his claims in state court, Wade must fairly present the same claims and legal theories urged in his federal *habeas* petition to each of the state courts through the Louisiana Supreme Court in a procedurally proper manner, either on direct appeal or on post-conviction review. Wade's ineffective assistance of counsel claim was first raised in his post-conviction relief application to the state district court. But it was only presented to the district court. Wade failed to assert this claim in his subsequent writ applications to the Louisiana Fourth Circuit and the Louisiana Supreme Court.[35] This claim is therefore unexhausted.

Additionally, however, the claim is procedurally barred. A federal *habeas* claim is also procedurally defaulted if the "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Nobles*, 127 F.3d at 420 (internal quotation marks omitted). As the State notes, if Wade now attempted to bring the unexhausted claim in the state courts, the Louisiana courts would undoubtedly find the

---

[35] State Rec., Vol. 5 of 5, Louisiana Supreme Court writ application No. 13-KH-1780.

claims procedurally barred.[36]  Accordingly, the claim is also defaulted, and, therefore, federal review is barred unless Wade demonstrates either (1) the existence of "cause" and "prejudice" or (2) that a failure to address the claims will result in a "fundamental miscarriage of justice." *See*, *e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 756–57 (5th Cir.2004). For the same reasons that Wade has not made those showings with respect to his exhausted claims, he likewise has not made those showings with respect to this unexhausted claim. As a result, his ineffective assistance of counsel claim is procedurally barred.

## RECOMMENDATION

**IT IS RECOMMENDED** that Wade's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

---

[36] See La. C.Cr.P. art. 930.4(E) ("A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.").

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[37]

New Orleans, Louisiana, this <u>11th</u> day of _____ May _____, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[37] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.